[Civ. No. 5823. Second Appellate District, Division One.—April 2, 1928.]

MABEL BUTNER THOMPSON, as Administratrix, etc., Respondent, v. O. W. CHILDS ESTATE COMPANY (a Corporation) et al., Defendants; J. M. DANZIGER, Appellant.

Morgrage, Stanley & O'Brien for Appellant.

Hazlett & Albee, George H. P. Shaw and C. E. McDowell for Respondent.

SHAW, J., *pro tem.*—This action was originally brought by plaintiff's testator to recover damages for a trespass on his land. Upon his death plaintiff, as his personal representative, was substituted for him and judgment was given in her favor against the defendant J. M. Danziger only, who appeals. Appellant concedes that the acts complained of were wrongful and that plaintiff is entitled to recover damages therefor to the amount of the judgment, but denies that he is legally responsible therefor. The persons who

actually did the acts in question were employed by one C. W. Whitley to do them as a part of his operations under an oil lease on the above mentioned land, and the only question presented by this appeal is whether appellant was a partner with Whitley in this matter and therefore liable for his acts.

Appellant had at one time been the owner of the oil lease above mentioned. Prior to the doing of the acts complained of he had executed an instrument by which he purported to assign this lease to Whitley. This instrument is signed by both appellant and Whitley and is much more than a mere assignment of the lease. It provides for payment to appellant of an over-riding royalty of 41/6 per cent of all oil and gas produced, and, also, that in consideration of the assignment Whitley shall pay to appellant the sum of $12,500 upon the execution of the instrument and appellant shall receive the further sum of $37,500 out of the proceeds of oil produced under the lease. The agreement further provides that Whitley shall have sole charge of all operations under the lease, with authority to purchase and hire materials and labor and contract bills therefor; that he shall drill three wells upon the leased land, the cost of the first two wells to be paid by him and the cost of the third well to be paid from the proceeds of oil produced, if sufficient, otherwise by him. All sums paid by Whitley on the cost of these wells are to be refunded to him out of the proceeds of oil produced. After appellant has received the sum of $37,500 to be paid him and Whitley has been reimbursed for all drilling and operating expenses paid by him, the agreement provides that all further net proceeds shall be shared by appellant and Whitley, forty per cent thereof going to appellant and sixty per cent to Whitley, and all funds needed for developing and operating the lease shall be furnished by the parties in the same proportions. There is also a provision that, except as to expenses to be advanced by Whitley, all moneys necessary for development and operation of the lease and for paying and discharging any and all obligations of Whitley incurred by or resulting from said development or operation, shall be contributed and paid by the parties in the proportions above mentioned, and that any and all obligations that shall result or arise by

operation of law, or otherwise, by reason of operations under the agreement, shall be paid by the parties in the same proportions. There are still other provisions for sharing expenses, which we forbear to quote.

"Partnership is the association of two or more persons, for the purpose of carrying on business together, and dividing its profits between them." (Civ. Code, sec. 2395.) "A partnership may be organized for the prosecution of one or two adventures, as well as for the conduct of a general and continuous business. It is not of the essence of a partnership that the parties to it should have known that their contract in law created a partnership." (*Westcott* v. *Gilman,* 170 Cal. 563, 569 [Ann. Cas. 1916E, 437, 150 Pac. 777, 780].) The fact that by agreement between the parties one of them is given the management of the partnership enterprise does not prevent a partnership from arising. (*Westcott* v. *Gilman, supra.*) The *indicia* of a partnership are at least as definite and clear in the agreement before us as in that construed in the case just cited, regarding which the court there said: "It is plain from the very terms of the agreement between these defendants that it measures up to the definition of a partnership as declared by section 2395 of the Civil Code. It was an association of two persons to carry on a definite business and to divide the profits and losses of that business."
 We think the agreement between appellant and Whitley constituted them partners in all operations thereunder. By its terms they were to operate the lease together as a business and divide its profits and losses. There was no other substantial evidence of the relations between them. Appellant's own testimony tended to indicate that they were operating under the agreement, and there was nothing in conflict therewith. It is clear, therefore, that the question of appellant's liability for the acts complained of depended solely upon the legal effect of that agreement. The judgment of the trial court is based upon the same construction which we have given to the agreement, and we find no error in it.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 31, 1928.